IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

DEWEY and GAY TEEL,

    Plaintiffs,

v.                                Civil Action No. 5:11CV5
                                            (STAMP)
CHESAPEAKE APPALACHIA, LLC,

    Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT,
## GRANTING IN PART AND DENYING IN PART
## DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT,
## DENYING DEFENDANT'S MOTION TO STRIKE,
## DENYING MOTIONS IN LIMINE AND
## APPROVING THE PARTIES' JOINT STIPULATION OF DISMISSAL

### I. Procedural History

The plaintiffs, Dewey and Gay Teel, commenced this civil action in the Circuit Court for Wetzel County, West Virginia based on allegations that the defendant, Chesapeake Appalachia, LLC ("Chesapeake"), physically intruded and caused damage to plaintiffs' land by depositing drilling waste and other material in pits on plaintiffs' property. In their complaint, the plaintiffs make claims of nuisance, trespass, negligence, strict liability, intentional infliction of emotional distress, and negligent infliction of emotional distress. The plaintiffs seek both monetary relief and injunctive relief, including the removal of the waste and the remediation of the contaminated areas of the

plaintiffs' property. Based on diversity jurisdiction, the defendant removed this action to federal court.

Thereafter, the plaintiffs and the defendant filed motions for partial summary judgment. The defendant makes two arguments in support of its motion for summary judgment, arguing: (1) the plaintiffs, as a matter of law, do not have common law trespass claims; and (2) the plaintiffs' claims for damages may not exceed fair market value of their damaged property.

In the plaintiffs' motion for partial summary judgment, the Teels seek summary judgment only as to their claim of common law trespass. In support of the motion, the plaintiffs argue: (1) the defendant is strictly limited to those acts reasonably necessary to the extraction of its minerals and acts unnecessary to extraction are trespass; (2) mineral law widely recognizes that a mineral owner's permanent waste disposal or purely optional occupation of surface owner's property is a trespass; (3) the defendant disposed of hundreds of barrels of drilling waste in pits it created on the plaintiffs' property, even though it has avoided using pits for years in many operations for reasons of safety, sanitation, surface disturbance prevention, and structural stability; and (4) plaintiffs are entitled to injunctive relief.

Both parties filed responses to the motions for partial summary judgment. In their response to the defendant's motion for partial summary judgment, the plaintiffs argue: (1) the defendant's

West Virginia Department of Environmental Protection ("WVDEP") permit does not insulate the defendant from common law liability; (2) the defendant's waste disposal was not necessary to mineral extraction and thus, the plaintiffs' common law claims are not precluded; and (3) injunctive relief is proper because monetary damages are not adequate.

The defendant filed both a response to the plaintiffs' motion for partial summary judgment and a motion to strike plaintiffs' motion for partial summary judgment. In the defendant's response, Chesapeake reiterates the arguments made in its motion for partial summary judgment. Thus, again it argues: (1) the plaintiffs, as a matter of law, do not have common law trespass claims; and (2) the plaintiffs' claims for damages may not exceed fair market value of their damaged property. In the motion to strike plaintiffs' motion for partial summary judgment, the defendant argues that based on this Court's ruling in Whiteman v. Chesapeake, No. 5:11CV3, 2012 U.S. Dist. LEXIS 78876 (N.D. W. Va. June 7, 2012), the Court should strike plaintiffs' motion for partial summary judgment as this Court already determined that common law trespass is not an available remedy for the activity at issue in this case. The defendant also takes issue with an affidavit included in the plaintiffs' motion for partial summary judgment, arguing that the submission was not only procedurally improper but also factually incorrect.

The parties then both filed replies in support of their partial motions for summary judgment and the plaintiffs also filed a response to the defendant's motion to strike. In plaintiffs' response to the defendant's motion to strike, the Teels argue that the affidavit was not procedurally nor factually incorrect. Even so, the plaintiffs argue this Court should not strike the plaintiffs' entire motion based on the affidavit, but rather the Court may disregard the affidavit without striking the entire motion. In the reply, the plaintiffs reiterate the arguments presented in their response to defendant's motion for partial summary judgment.

The defendant argues in its reply: (1) Chesapeake obtained broad rights to use the property through the severance deed and lease and the WVDEP permit recognizes that its actions were reasonable and necessary and thus it did not commit a trespass; and (2) the plaintiffs' damages may not exceed the fair market value of the damaged property and the Court is not bound to award injunctive relief in this situation.

Thereafter, the parties submitted a joint motion to continue the trial and amend the scheduling order. In this motion, the parties agreed that if this Court ruled on the summary judgment motions in accordance with its recent opinion in Whiteman, and thus grants the defendant's motion for summary judgment on the trespass claim, the plaintiffs will voluntarily stipulate to a dismissal

4

regarding all other claims. Plaintiffs then may file an appeal of the Court's ruling regarding the trespass claim. Following a status conference concerning the joint motion, the undersigned judge issued tentative rulings on the motions for summary judgment and the matters raised by the joint motion. The parties thereafter filed a joint stipulation agreeing to the dismissal of all claims except the plaintiffs' trespass claim. This Court approves the parties' stipulation of dismissal as to those claims. Thus, the only claim left for this Court to resolve in the present action is the plaintiffs' trespass claim. For the reasons stated below, this Court finds that defendant's motion for partial summary judgment is granted in part as to the portion relating to plaintiffs' trespass claim and denied in part as to the portion concerning the limitation of damages, as this matter is moot. Due to this Court granting defendant's motion for summary judgment as to plaintiffs' trespass claim, the plaintiffs' motion for partial summary judgment, defendant's motion to strike, and all motions in limine are denied as moot.

II. Facts

The Teels own the surface of approximately 104 acres of land in Wetzel County, West Virginia, known as Blake Ridge. The Teels live on this land together with their two sons, pets, and livestock. In 1959, the then owner of Blake Ridge entered into a severance deed that split the surface estate and the mineral

estate.  Consequently, the Teels own only the surface rights to Blake Ridge.

Chesapeake began its natural gas drilling operations on the Teels' property in 2008 pursuant to a third party lease agreement. At that time, Gay Teel and her siblings owned the surface rights; it was not until 2009, that Dewey and Gay Teel became the joint owners of Blake Ridge.  The plaintiffs nor their predecessors leased mineral rights to Chesapeake, but instead, Chesapeake's rights flow entirely from its lease with a third party, whose rights flow entirely from the 1959 deed severing the mineral rights.  There is, however, no dispute that Chesapeake currently owns the mineral rights underlying plaintiffs' land.

When Chesapeake started its operations on Blake Ridge, it cleared and graded five acres of land where it installed two natural gas wells and constructed two pits for waste disposal. Chesapeake obtained the required WVDEP permits for such construction.  ECF No. 44 Ex. 2.  According to the plaintiffs, Chesapeake deposited large volumes of drill cuttings,[1] mud, and chemical additives from their operations into one of the pits.  The Teels allege that the pit was originally lined with a plastic liner.  However, Chesapeake ruptured the lining and eventually removed it.  Thereafter, Chesapeake did not remove the residual

---

[1] Drill cuttings are pieces of rock and earth that are dislodged by the drill as it creates a bore hole.

waste from the pit but instead, covered the pit containing the waste with soil from the plaintiffs' property. The Teels' property remains in this condition today. The Teels allege that Chesapeake's waste disposal actions damaged their property value and will likely cause harm to the plaintiffs' persons and property.

III. <u>Applicable Law</u>

Under Rule 56(c) of the Federal Rules of Civil Procedure,

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." <u>Temkin v. Frederick County Comm'rs</u>, 945 F.2d 716, 718-19 (4th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1095 (1992) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986)). However, as the United States Supreme Court noted in <u>Anderson</u>, "Rule 56(e) itself provides that a party opposing a properly supported motion for

7

summary judgment may not rest upon the mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)(stating that summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. See Oksanen v. Page Mem'l Hosp., 912 F.2d 73, 78 (4th Cir. 1990), cert. denied, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all

inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

IV. Discussion

As both parties acknowledge "[i]t is well settled in West Virginia that one who owns subsurface rights to a parcel of property has the right to use the surface of the land in such a manner and with such means as would be fairly necessary for the enjoyment of the subsurface estate." Depeterdy v. Cabot Oil & Gas Corp., No. CA-97-966-2, 1999 WL 33229744, at *2 (S.D. W. Va. Sept. 13, 1999) (citing Squires v. Lafferty, 121 S.E. 90, 91 (W. Va. 1924)). The West Virginia Supreme Court of Appeals has held that the issue of unreasonable use is one to be determined by the court.

> [W]e do not think that whether the plaintiff's rights have been invaded, or whether the defendant has exceed its rights are questions of fact for determination of the jury. In a case where there is a dispute of fact, the jury should find the facts, and from such finding of facts by the jury it is the duty of the court to determine whether the use of the surface by the owner of the minerals has exceeded the fairly necessary use thereof, and whether the owner of the minerals has invaded the rights of the surface owner, and thus exceeded the rights possessed by the owner of such minerals.

Adkins v. United Fuel Gas Co., 61 S.E.2d 633, 724 (W. Va. 1950). The United States Court of Appeals for the Fourth Circuit has confirmed that the rule of Adkins is binding on a federal court sitting in diversity. Justice v. Pennzoil Co., 598 F.2d 1339, 1343 (4th Cir. 1979) ("The court will then determine as a matter of law

9

whether Pennzoil has exceeded its right to fairly and reasonably use the surface for enjoyment of its mineral estate."). Thus, this Court must determine whether Chesapeake's use of the plaintiffs' land was fairly necessary to the extraction of the natural resource under the circumstances.

This Court must begin its determination of whether Chesapeake's use of the plaintiffs' land was fairly necessary to the extraction of gas by examining the instrument through which Chesapeake derived the subsurface rights. As stated above, the plaintiffs do not own the subsurface rights due to a severance deed entered into in 1959 by the previous owners of Blake Ridge. Chesapeake's subsurface rights, which are the result of a lease, flow from that severance deed. The severance deed contains a reservation of the oil and gas rights for the then owners. Specifically the severance deed provides:

> There is reserved from this conveyance all of the oil and gas within the underlying said real estate herein conveyed, along with all leasing rights and also along with **all rights in mining or producing said oil and gas**.

ECF No. 46 Ex. 2 (emphasis added). The later lease between the owners of the reservation and The Manufacturers Light and Heat Company ("Light and Heat Co."), which was entered into in 1963 provides the Light and Heat Co. with

> "the exclusive right to enter upon the [land] to drill, maintain and operate new wells and to recondition, reopen, operate and maintain all existing and abandoned wells located thereon for the production of oil and gas . . . and all other rights and privileges necessary,

incident to, or convenient for the operation of the above described tract . . . ."

ECF No. 44 Ex. 1. Clearly, the reservation and the later lease do not provide Chesapeake with the explicit right to construct waste pits or dispose of drill cuttings and other materials within those pits. The only rights Chesapeake is able to claim it has are rights that are implied in those documents for the mining or producing of the oil and gas. Furthermore, as mentioned above, those rights must still be considered fairly necessary for the extraction of the minerals.

As this Court explained in Whiteman, although there are cases that provide some insight as to what surface use rights will be implied in situations similar to this, no case specifically discusses the construction and use of pits for drill cuttings and other materials. See Buffalo Mining Co. v. Martin, 267 S.E.2d 721 (W. Va. 1980) (construing language in a mineral severance deed to allow by implication a surface easement for an electric line for the ventilation of a coal mine); Creasey v. Pyramid Coal Corp., 61 N.E.2d 477 (Ind. 1945) (interpreting the broad terms in a grant of mining rights to allow for the installation of a high-voltage electric transmission pole line); Trivette v. Consolidation Coal Co., 177 S.W.2d 868 (Ky. 1944) (finding that where a deed of minerals and mining rights conferred the right to use the surface for the enjoyment of rights conveyed and to erect necessary equipment, the right to construct a power line was authorized

11

though not literally expressed); <u>Flannery v. Utilities Elk Horn Coal Co.</u>, 138 S.W.2d 988 (Ky. 1940) (finding that a provision in the mineral deed giving the grantees an easement for the construction and operation of tramroads deemed necessary and convenient in mining operations, included the right to construct telephone and transmission lines on the right of way of their tramroad, though not specifically mentioned in the deed). This Court acknowledges that:

> [W]here implied as opposed to express rights are sought, the test of what is reasonable and necessary becomes more exacting, since the mineral owner is seeking a right that he claims not by virtue of any express language in the mineral severance deed, but by necessary implication as a correlative to those rights expressed in the deed. In order for such a claim to be successful, it must be demonstrated not only that the right is reasonably necessary for the extraction of the mineral, but also that the right can be exercised without any substantial burden to the surface owner.

<u>Buffalo Mining Co.</u>, 267 S.E.2d at 725-26. Therefore, in determining whether these rights are in fact implied, this Court must not only look to whether the construction and use of the pits is fairly or reasonably necessary, but also this Court must look at whether the pits substantially burden the surface owner.

To determine whether such rights were implied, this Court in <u>Whiteman</u> began by first looking at whether such actions were contemplated by the West Virginia Code and the regulations of the WVDEP. The WVDEP permits were issued to the defendant pursuant to Chapter 22 of the West Virginia Code. Chapter 22 sets forth

12

reclamation requirements that concern pits containing drill cuttings, stating that "[w]ithin six months after the completion of the drilling process, the operator shall fill all the pits for containing muds, cuttings, salt water and oil that are not needed for production purposes, or are not required or allowed by state or federal law or rule . . ." W. Va. Code § 22-6-30(a). Thus, Chesapeake's decision to fill the pits on the Teels' property was an act contemplated by West Virginia law. The plaintiffs are correct in stating that permits do not provide immunizations from common law standards. FPL Farming Ltd. v. Envtl. Processing Sys., L.C., 351 S.W.3d 306, 310 (Tex. 2011); see Moundsville Water Co v. Moundsville Sand Co., 19 S.E.2d 217, 220 (finding that a party's permit from the War Department did nothing to neutralize the trespass). However, the WVDEP permits can, as they do in this case, serve to inform this Court of the practices of the oil and gas industry in West Virginia.[2]

---

[2]On December 14, 2011, the West Virginia Natural Gas Horizontal Well Control Act ("Horizontal Well Act"), W. Va. Code § 22-6A-1 et seq., which was enacted to more adequately address the new technologies and practices for conventional oil and gas operations, became effective. The Horizontal Well Act states, in part: "In some instances [the practice of drilling for natural gas contained in underground shales and other geologic formations] may require the construction of large impoundments or pits for the storage of water or wastewater." W. Va. Code. § 22-6A-2(a)(3). A "pit" is defined as "a man-made excavation or diked area that contains or is intended to contain an accumulation of process waste fluids, drill cuttings or any other liquid substance generated in the development of a horizontal well and which could impact surface or groundwater." W. Va. Code § 22-6A-4(b)(10). The Horizontal Well Act also discusses the certificate of approval required for

West Virginia also promulgated regulations and rules governing horizontal well development. The West Virginia Code of State Rules provides that "[a]ll drill cuttings and associated drilling mud generated from well sites . . . shall be disposed of in an approved solid waste facility or managed on-site in a manner otherwise approved by the Secretary." 35 C.S.R. § 8-4.3. Drilling waste, including drill cuttings, can be disposed of into pits and subsequently buried, pursuant to the reclamation plan described in 35 C.S.R. § 4-16.4. Although the plaintiffs stated that it is no longer Chesapeake's practice, at least in West Virginia, to place drill cuttings on-site, there is no law to suggest that the West Virginia legislature has banned on-site pits from use. The discussion of pits and impoundments in the statutes, rules, and regulations governing the exploration, drilling, storage, and production of oil and natural gas, suggests that the creation of the pits on the Teels' property was necessary and reasonable.

Earlier this year, the United States District Court for the District of North Dakota decided a case that is factually similar to the case before this Court. In <u>Kartch v. EOG Res., Inc.</u>, No.

---

large pits or impoundment construction and provides that if a pit is to be constructed, notice must be provided to property owners. W. Va. Code §§ 22-6A-9 and 22-6A-10. Moreover, the Horizontal Well Act sets forth reclamation requirements for all pits and impoundments. W. Va. Code § 22-6A-14. Although the Horizontal Well Act was enacted after the pits were constructed on the Teels' property, it serves to show that the practice of using pits to collect drill cuttings is one that is still recognized and regulated by West Virginia law.

14

4:10-cv-014, 2012 WL 661978 (D. N.D. Feb. 29, 2012), the plaintiffs alleged that the liner and waste remaining in a reserve pit created in connection with a drilling operation constituted a trespass and caused unnecessary damage to the surface estate. Id. at *3. In response to the plaintiffs' allegations, defendant EOG Resources, Inc. ("EOG") argued that it is entitled to use a reserve pit as a matter of law because the North Dakota Industrial Commission regulates and permits reserve pit use. Id. In the alternative, EOG argued that if common law principles apply, the use of a reserve pit is reasonable and within EOG's rights as the dominant estate owner. Id. Before discussing the reasonableness of the reserve pit, the Kartch court first noted:

> Whether the express uses are set out or not, the mere granting of the lease creates and vests in the lessee the dominant estate in the surface of the land for the purposes of the lease; by implication it grants the lessee the use of the surface to the extent necessary to a full enjoyment of the grant.

Id. at *6 (quoting Texaco, Inc. v. Faris, 413 S.W.2d 147, 149 (Tex. 1967)). In addressing EOG's contention that its use of a reserve pit is not unreasonable because the North Dakota Industrial Commission permits and regulates their use, the court stated "compliance with a rule or statute is evidence of reasonableness, but it is not dispositive as to an activity's reasonableness." Id. at *8 ("Accordingly, the fact that the North Dakota Industrial Commission's rules permit the use of a reserve pit is evidence that

15

EOG's use of a reserve pit, rather than a closed-loop system,[3] is reasonable but is not dispositive.").

Turning to the reasonableness of the reserve pit, the Kartch court rejected the plaintiffs' argument that the pit was unreasonable given the alternative of a closed-loop system, finding that "the existence of an alternative is not sufficient to render the developer's use of the land unreasonable." Id. at *10. The Kartch court held that at the time when EOG drilled and reclaimed the well, reserve pits, rather than closed-loop systems, were commonly used in North Dakota. Id. Therefore, the court found as a matter of law that EGO's use of a reserve pit was not unreasonable. Id. Additionally, the court held that "the burying of waste and the use of a synthetic liner in a reserve pit does not constitute a trespass under North Dakota law."[4] Id. at *20.

Recently, this Court decided a case that is also factually similar to this case. In Whiteman v. Chesapeake Appalachia, LLC., No. 5:11CV31, 2012 U.S. Dist. LEXIS 78876 (N.D. W. Va. June 7, 2012), the plaintiffs, like the plaintiffs in Kartch, argued that

---

[3]A closed-loop system is one in which there is no on-site disposal of any waste produced or created during the drilling, completion or other operations phrase associated with the well. See Bottrell Dep. 48:14-24 (stating that in a closed-loop system, there is no pit dug).

[4]The court did, however, allow the parties to conduct limited discovery regarding the effects of the reserve pit, the tear in the liner, and any potential resulting contamination. Kartch, 2012 WL 661978, at *20.

16

the use of the pits was unreasonable because the closed-loop system existed as an alternative. Id. at *24. The plaintiffs in Whiteman also argued that the disposal of residual industrial waste on a surface owner's land is trespass. Id. at *24-25. In support of this argument, the plaintiffs cited to case law that did not discuss drill cutting pits created in connection with natural gas wells, but rather dealt with other minerals and practices. Id. After examining the West Virginia statutes, rules, and regulations and also examining the Kartch case, this Court found that the placement of drill cuttings in pits on the plaintiffs' property was suitable and reasonable to the natural gas operation. Id. at *25. Specifically, this Court said, "the mere fact that Chesapeake eventually migrated to a closed-loop system does not render its prior use of pits unreasonable, especially given the West Virginia law currently in place regulating the use of the pits." Id. at *26.

The Teels argue, like the plaintiffs in Whiteman and Kartch, that because the alternative closed-loop system existed, the defendant's use of the pits was unreasonable. Moreover, like the plaintiffs in Whiteman, the Teels argue that disposal of residual industrial waste on a surface owner's land is trespass by citing cases law that did not discuss drill cutting pits created in connection with natural gas wells but rather dealt with other minerals and practices. See Phillips v. Sipsey Coal Mining Co.,

17

118 So. 513, 530-31 (Ala. 1928) (stating that in the absence of an agreement, express or implied, the lessee of a coal mine has no right to dump upon the surface of the leased premises slate and refuse taken from adjoining land not owned by the lessor); Marvin v. The Brewster Iron Mining Co., 1874 WL 11019, at *4 (N.Y. Jan. 27, 1874) (finding that the defendant had no right to keep on the plaintiff's land any ore, refuse, rubbish, barn, stable, blacksmith shop, or other building); Hooper v. Dora Coal Mining Co., 10 So. 652, 654 (Ala. 1892) (holding that the frequent and continuous deposit of vast quantities of slate on lands valuable and used for agricultural purposes, and the emptying of foul or filthy water pumped from the mines, deteriorates the value and usefulness of the land and permanently injures its future use and enjoyment). While this Court is sympathetic to the Teels' concerns about their surface property, this Court finds no consequential factual difference between this case and the Whiteman case that would alter the Court's findings regarding the use of pits in natural gas operations. Thus, this Court finds like in Whiteman, that based upon West Virginia law and the facts in this case, plaintiffs' trespass claim fails, and the plaintiffs' motion for partial summary judgment must be denied.[5] To the extent the defendant's

---

[5] Because this Court finds that Chesapeake's use of pits for drill cuttings on the plaintiffs' land is not a trespass, there is no need to address the question of whether the plaintiffs are entitled to injunctive relief.

motion for summary judgment argues that the pits do not constitute trespass, it is granted.[6]

## V. Conclusion

For the above stated reasons, plaintiffs' motion for partial summary judgment (ECF No. 46) is DENIED, defendant's motion for partial summary judgment (ECF No. 44) is GRANTED IN PART and DENIED IN PART, defendant's motion to strike (ECF No. 49) is DENIED, all motions in limine (ECF Nos. 55, 56, 57, 58, 59, 60, and 61) are DENIED, and the parties' joint stipulation of dismissal (ECF No. 71) is APPROVED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED: October 25, 2012

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE

---

[6]Defendant's other argument in its partial motion for summary judgment regarding the amount of damages plaintiffs may seek is denied as moot because this Court found that the plaintiffs' trespass claim fails and plaintiffs stipulated to the dismissal of all other remaining claims. Thus, damages are no longer at issue.

19